Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Apelante<br><br>v.<br><br>RAFAEL DOITTEAU CRUZ e YSIS DOITTEAU COFRESÍ<br><br>Apelados | KLAN202500148 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala Superior de Mayagüez<br><br>Civil Núm.: CB2019CV00124 (200)<br><br>Sobre: Cobro de Dinero |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Santiago Calderón y la Jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

### SENTENCIA

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece ante nos el Banco Popular de Puerto Rico ("Banco" o "Apelante") mediante *Recurso de Apelación* presentado el 24 de febrero de 2025. Nos solicita la revocación de la *Sentencia Final* emitida el 16 de enero de 2025, notificada el día 23 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de Cabo Rojo ("foro primario" o "foro *a quo*"). Por virtud del aludido dictamen, el foro primario declaró *Ha Lugar* la reconvención instada por Ysis Doitteau Cofresí ("señora Doitteau Cofresí" o "Apelada") y, en consecuencia, le concedió una indemnización por daños y perjuicios valorados en quince mil dólares ($15,000.00).

Por los fundamentos que expondremos a continuación, **modificamos** la *Sentencia* apelada y así modificada, **confirmamos**.

### I.

Se desprende del expediente que, el 8 de marzo de 2019, el Banco presentó *Demanda* sobre cobro de dinero contra el señor Rafael Doitteau Cruz ("señor Doitteau Cruz") y la señora Doitteau

Cofresí.[1] Mediante la misma, alegó que tanto el señor Doitteau Cruz como la señora Doitteau Cofresí le adeudaban al Banco trece mil dólares ($13,000.00) por concepto de la cuenta de línea de crédito número 0000164021051. Asimismo, requirió el pago de la deuda por concepto de tarjeta de crédito, identificada con la numeración 5310-5400-0417-6003, la cual ascendía a diecisiete mil doscientos cincuenta y cuatro dólares con cincuenta y seis centavos ($17,254.56), más costas, gastos y mil doscientos veinticinco dólares con cuarenta y seis centavos ($1,225.46) por honorarios de abogado.

En respuesta, el 22 de julio de 2019, la señora Doitteau Cofresí presentó *Contestación a Demanda.*[2] En esta, alegó que la referida cuenta de línea de crédito identificada con numeración 0000164021051, fue solicitada, aprobada y otorgada al señor Doitteau Cruz cuando ésta era menor de edad. En vista de ello, esgrimió que nunca fue titular de dicho instrumento. A su vez, adujo que el señor Doitteau Cruz la incluyó en la cuenta únicamente como firmante autorizada. Cónsono con lo anterior, puntualizó que no solicitó préstamo alguno, no firmó contrato de préstamo, ni tampoco solicitó línea de crédito con el Banco. Por consiguiente, señaló que la responsabilidad del pago de la aludida línea de crédito no le correspondía. En torno a la alegación de la tarjeta de crédito número 5310-5400-0417-6003, la señora Doitteau Cofresí aludió que no era titular de dicha tarjeta. De igual forma, presentó reconvención y le solicitó al foro primario una indemnización en daños por angustias mentales ascendentes a quince mil dólares ($15,000.00). En concreto la Apelada esbozó las siguientes alegaciones contenidas en la reconvención:

> 11. Que la demanda fue presentada contra la compareciente de forma temeraria y/o frívola contra la compareciente por lo que se le debe imponer el pago de honorarios de abogado.

---

[1] Véase, Apéndice del Recurso, págs. 1-2.
[2] *Íd.*, págs. 12-14.

12. Que la parte demandada ha causado daños a la compareciente informando al "Credit Bureau" sobre cuentas que no le pertenecen a la compareciente; afectándole su crédito.

13. Que la parte demandante utilizó y/o transfirió información personal de la compareciente existente en la base de datos de dicha institución (por la compareciente tener algunas cuentas personales en dicho banco) para imponer responsabilidad solidaria y presión indebida para el cobro de deudas ajenas.

14. Que a causa de la demanda presentada la compareciente ha tenido que invertir tiempo y dinero en la representación de la presente acción.

15. Que a causa de la demanda presentada la compareciente ha sufrido angustias mentales.

16. Que la parte compareciente valora el daño causado a su persona en la cantidad de quince mil dólares ($15,000.00 USD); lo cual reclama a la parte demandante en concepto de daños y perjuicios.[3]

Por su parte, el 5 de agosto de 2019, el señor Doitteau Cruz presentó *Contestación a Demanda*.[4] En esta, negó ciertas alegaciones contenidas en la *Demanda* y levantó varias defensas afirmativas. Posteriormente, el 6 de noviembre de 2019, el Banco instó *Contestación a Reconvención*.[5] Mediante la misma, negó la mayoría de las alegaciones. Igualmente, reconoció que la línea de crédito 0000164021051 se abrió cuando la señora Doitteau Cofresí era menor de edad. No empece a lo anterior, puntualizó que la línea de crédito en cuestión fue solicitada y aprobada cuando la señora Doitteau Cofresí era mayor de edad y, a esos efectos, firmó en la misma. Ante este cuadro, reiteró que la señora Doitteau Cofresí era responsable de la deuda reclamada referente a dicha línea de crédito.

Así las cosas, el 12 de noviembre de 2020, la señora Doitteau Cofresí presentó *Moción en Solicitud de Sentencia Sumaria*.[6] En esencia, adujo que correspondía desestimar la causa de acción radicada por el Banco. Enfatizó que, el Apelante no había logrado demostrar la existencia de una relación entre esta entidad y la

---

[3] *Íd.*, pág. 13.
[4] *Íd.*, págs. 16-18.
[5] *Íd.*, págs. 25-26.
[6] *Íd.*, págs. 33-46.

Apelada, en lo que respecta a la línea de crédito y la tarjeta de crédito en controversia. De igual forma y en oposición, el 16 de diciembre de 2020, el Banco sometió *Réplica a: Moción de Sentencia Sumaria.*[7] Mediante esta, esbozó que la solicitud de sentencia sumaria presentada por la Apelada no cumplía con la Regla 36.1 de Procedimiento Civil 32 LPRA. Ap. V, R. 36.1. Además, esgrimió que durante el transcurso del caso había surgido evidencia que demostraba que la señora Doitteau Cofresí había firmado un documento intitulado *Anejo al Contrato de Cuenta de Depósito* relacionado a la cuenta reclamada en la demanda.

Tras varios eventos procesales, el 4 de enero de 2021, las partes de epígrafe presentaron *Informe Preliminar entre Abogados (as) (Conferencia con antelación a juicio).*[8] Conforme se desprende del aludido documento, el Banco enmendó las alegaciones de la demanda a los efectos de notificar su desistimiento contra la señora Doitteau Cofresí la reclamación previamente presentada con relación a la deuda de tarjeta de crédito.[9]

Trabada así la controversia, el 12 de agosto de 2021, el foro primario emitió y notificó *Resolución.*[10] Por virtud de esta, declaró *No Ha Lugar* la solicitud de sentencia sumaria interpuesta por la señora Doitteau Cofresí. Así pues, en atención a lo dispuesto por la Regla 36.4 de Procedimiento Civil, *supra*, el foro primario formuló las siguientes determinaciones de hechos que no están en controversia:

1. La parte demandante presentó una demanda alegando que la codemandada Ysis Doitteau Cofresí adeuda a la parte demandante, por concepto de cuenta de línea de crédito 000164021051, la suma de $13,000.00, las costas y gastos del caso y la suma de $1,300.00 por concepto de honorarios de abogado; y por concepto de Tarjeta de Crédito 5310-5400-0417-6003, la suma de $17,254.56 Ud, [sic] las costas y gastos del caso más la

---

[7] *Íd.*, págs. 67-68.
[8] *Íd.*, págs. 74-90.
[9] *Íd.*, pág. 89.
[10] *Íd.*, págs. 106-108.

suma de $1,725.46 por concepto de honorarios de abogado.

2.  La parte demandante presentó una demanda alegando que la codemandada Doitteau Cofresí ha incumplido con "los términos del préstamo", por lo que la obligación se declaraba vencida en su totalidad siendo líquida y exigible en Derecho.

3.  Que la parte codemandada Doitteau Cofresí nació en Mayagüez Puerto Rico el 14 de julio de 1982.

4.  En el documento PRIMER INTERROGATORIO Y SOLICITUD DE PRODUCCI[Ó]N DE DOCUMENTOS, cursado a la parte demandante por la codemandada Doitteau Cofresí el 22 de julio de 2019, esta solicitó a la parte demandante Banco Popular de Puerto Rico que proveyera copia de todos los documentos o evidencia real, demostrativa, científica, electrónica o de otra naturaleza que estableciera lo siguiente:

    a.  una relación contractual o de negocios entre la codemandada Doitteau Cofresí y Banco Popular de Puerto Rico, con relación a la línea de crédito del Banco Popular de Puerto Rico número 0000164021051 y la tarjeta de crédito del Banco Popular de Puerto Rico número 5310-5400-0417-6003.

    b.  los reportes informados a las agencias crediticias o *Credit Bureau* con relación a la línea de crédito del Banco Popular de Puerto Rico número 0000164021051, en relación a la tarjeta de crédito del Banco Popular de Puerto Rico número 5310-5400-0417-6003 y con relación a la actividad económica de la codemandada Doitteau Cofresí para los años 2014 al 2019.

    c.  la solicitud, aprobación, balance de línea de crédito aprobada, compromiso de pago, contrato de servicio y/o de préstamo (con todas sus enmiendas), notificaciones o decisiones del Banco Popular sobre disminución de crédito con relación a la línea de crédito del Banco Popular número 0000164021051 y de la tarjeta de crédito 5310-5400-0417-6003 del Banco Popular.

5.  La línea de crédito del Banco Popular número 0000164021051 no constaba en el historial crediticio de la codemandada Doitteau Cofresí a la fecha del 21 de agosto de 2017.

6.  Que el Banco Popular de Puerto Rico informó a las agencias crediticias una delincuencia en relación con la línea de crédito del Banco Popular número 0000164021051.

7.  La codemandada Doitteau Cofresí no firmó contrato de préstamo ni servicio en relación con la tarjeta de crédito 5310- 5400-0417-6003.

8.  La codemandada Doitteau Cofresí nunca ha solicitado una tarjeta de crédito con el Banco Popular de Puerto Rico.

9.  La codemandada Doitteau Cofresí no es titular de la tarjeta de crédito 5310-5400-0417-6003.

10. El Banco Popular, en algún momento entre las fechas del 21 de agosto de 2017 y 7 de noviembre de 2019, informó a las agencias crediticias o *Credit Bureau* que la línea de crédito del Banco Popular número

0000164021051 era responsabilidad de la codemandada Doitteau Cofresí.

11. El Banco Popular de Puerto Rico informó a las agencias crediticias una delincuencia con relación a la línea de crédito del Banco Popular número 0000164021051.[11]

De otro lado, el foro *a quo* concluyó que los siguientes hechos estaban realmente controvertidos:

a. Cuándo fue que se solicitó la cuantía de 13,000 de la cuenta 0000164021051, ya que la demandante en su contestación a interrogatorio indicó que fue solicitada en el 2014. La prueba documental presentada en la réplica establece otra fecha.

b. Si la codemandada prestó su consentimiento en la cuenta 0000164021051 en el año 2010 para la línea de crédito.

c. El daño que se ha ocasionado a la codemandada por el reporte a las agencias de crédito sobre incumplimiento de las dos cuentas originalmente objeto de esta controversia.

d. Todo lo concerniente a la prueba documental solicitada por la parte codemandada en el descubrimiento de prueba, sus objeciones y si estaban disponibles o no al momento de ser solicitadas al demandante.[12]

En vista de lo anterior, el 10 de mayo de 2022, el foro primario celebró una vista en su fondo.[13] Conforme surge de la *Minuta* del juicio, tras el Banco presentar su evidencia, la Apelada solicitó una solicitud de desestimación contra la prueba al amparo de la Regla 39.2 de Procedimiento Civil, *supra*.[14] Posteriormente, el 10 de agosto de 2022, notificada el día19 del mismo mes y año, el foro *a quo* emitió *Sentencia Parcial*.[15] Mediante la misma, acogió las determinaciones de hechos formuladas previamente en la *Resolución* emitida el 12 de agosto de 2021. Cónsono con estas y con la prueba presentada en la vista celebrada el 10 de mayo de 2022, el foro primario declaró *Ha Lugar* la moción de desestimación presentada en corte abierta por la Apelada, y, por consiguiente, desestimó con perjuicio el pleito contra ésta. A esos efectos, le impuso al Apelante el pago de mil quinientos dólares ($1,500.00) en

---

[11] *Íd.*
[12] *Íd.*, pág. 107.
[13] *Íd.*, págs. 123-125.
[14] *Íd.*, pág. 124.
[15] *Íd.*, págs. 197-202.

concepto de honorarios de abogado por temeridad y ordenó la continuación de los procedimientos en cuanto al señor Doitteau Cruz y en torno a la reconvención instada por la señora Doitteau Cofresí contra el Banco.

En desacuerdo, el 2 de septiembre de 2022, el Banco presentó *Reconsideración de Sentencia Parcial.*[16] En esta, esgrimió que, durante el juicio en su fondo, el Banco realizó una oferta de prueba en torno a dos (2) documentos adicionales relacionados a la línea de crédito 00001164021051. Por su lado, 14 de septiembre de 2022, la Apelada presentó *Oposición a "Reconsideración a Sentencia Parcial"*, en la que reiteró que el Banco nunca contó con evidencia para probar la solidaridad de la señora Doitteau Cofresí. Examinado los escritos antes mencionados, el 5 de octubre de 2022, notificada al día siguiente, el foro *a quo* emitió *Resolución* en la que declaró *No Ha Lugar* la solicitud de reconsideración instada por el Banco.[17]

Inconforme aún, el 4 de noviembre de 2022, el Banco acudió ante esta Curia mediante recurso de *certiorari* en el alfanumérico KLCE202201211, el cual fue acogido como apelación.[18] Tras perfeccionarse el recurso y varias incidencias procesales que no son necesarias detallar, el 28 de junio de 2024, este foro apelativo confirmó el dictamen apelado.

Recibido el mandato,[19] el foro primario continuó con los procedimientos y el 20 de septiembre de 2024, la Apelada presentó *Solicitud de Sentencia Final.*[20] Mediante esta, solicitó que el foro primario resolviera la reconvención que se encontraba pendiente y, por consiguiente, condenara al Banco a pagar quince mil dólares ($15,000.00) en concepto de compensación por daños, más las costas y honorarios de abogado. Atendido este escrito, el 25 de

---

[16] *Íd.*, págs. 215-221.
[17] Véase, SUMAC, Entrada 112.
[18] Véase, Apéndice del Recurso, págs. 404-432.
[19] *Íd.*, pág. 482.
[20] *Íd.*, págs. 463-468

septiembre de 2024, el foro primario emitió *Resolución* en la que le solicitó a las partes a que presentaran memorando de derecho.[21]

Entre tanto, el 30 de septiembre de 2024, el señor Doitteau Cruz presentó *Solicitud de Sentencia Final.*[22] En esta, detalló que correspondía la desestimación del pleito contra éste , pues se encontraba en un procedimiento de Quiebras en el Tribunal Federal, y que sehabía emitido un *Order of Discharge.* Como corolario de lo anterior, el 10 de octubre de 2024, el foro primario dictó *Sentencia Parcial* y decretó el archivo con perjuicio del pleito en cuanto al señor Doitteau Cruz.[23]

Por otro lado, el 22 de octubre de 2024, el Banco presentó *Escrito en Cumplimiento de Orden del 25 de septiembre de 2024 y Sometiendo Memorando de Derecho.*[24] En esta, expuso su teoría legal del caso y solicitó la desestimación de la reconvención. Por su parte, el 23 de octubre de 2024, la Apelada sometió *Memorando de Derecho (En apoyo a Reconvención)* y expuso las razones por las cuales el foro primario debía conceder los remedios solicitados en la reconvención.[25]

Así las cosas, el 16 de enero de 2025, notificada el 23 de enero del mismo año, el foro primario emitió *Sentencia Final.*[26] Por virtud de esta, el foro primario acogió las once (11) determinaciones de hechos que ya se habían plasmado en la Resolución emitida, el 12 de agosto de 2021, e incluyó únicamente una determinación de hecho adicional:

> 12. La parte codemandada Ysis Doitteau Cofresí en la vista del pasado 9 de septiembre de 2022 **evidenció** mediante su testimonio que la parte demandante, mediante la presentación y litigación del caso de epígrafe en contra de la codemandada, **le causó daños; afectándole su estatus crediticio, al punto de no poder obtener un préstamo para consolidar sus deudas en momentos de incertidumbre económica como lo fue la pandemia de**

---

[21] Véase, SUMAC, Entrada 129.
[22] Véase, Apéndice del Recurso, págs. 469-475.
[23] *Íd.*, pág. 516.
[24] *Íd.*, págs. 517-522.
[25] *Íd.*, págs. 523-546.
[26] *Íd.*, págs. 549-566.

**COVID19; que las actuaciones de la parte demandante le han causado estrés y ansiedad, y angustias mentales y emocionales al punto de padecer la codemandada un trastorno de ansiedad denominado tricotilomanía; y obligando a la codemandada a invertir tiempo y dinero en defenderse de la demanda** presentada en su contra desde principios del año 2019 hasta el presente (énfasis nuestro).[27]

Cónsono con estas, declaró *Ha Lugar* la reconvención de la Apelada y dispuso lo siguiente:

Se ordena a la parte demandante BANCO POPULAR DE PUERTO RICO al pago a favor de la codemandada Ysis Doitteau Cofresí, en concepto de compensación de daños y perjuicios, la suma principal de quince mil dólares ($15,000.00 USd).

Se impone a la parte demandante el pago a favor de la codemandada Ysis Doitteau Cofresí de interés por temeridad al tipo legal de nueve puntos cinco por ciento (9.5%) en vigor a esta fecha, desde la presentación de la demanda del caso de epígrafe hasta la fecha en que se dicta esta sentencia, a computarse sobre la cuantía de la sentencia.

Se impone además a la parte demandante el pago a favor de la codemandada Ysis Doitteau Cofresí de interés al tipo legal de nueve punto cinco por ciento (9.5%) en vigor a la fecha de esta sentencia; a computarse sobre la cuantía de la sentencia desde la fecha de hoy en que se dicta la sentencia y hasta que esta sentencia sea satisfecha, incluyendo las costas y honorarios de abogado.

Se aprueba el memorando de costas presentado por la codemandada Ysis Doitteau Cofresí el pasado 20 de septiembre de 2024 y se ordena a la parte demandante el pago a favor de la codemandada Ysis Doitteau Cofresí de la suma de quinientos veinticinco dólares con cuarenta y seis centavos ($525.46 USD) en concepto de costas. Se ordena a la parte demandante el pago a favor de la codemandada Ysis Doitteau Cofresí de la suma de mil quinientos dólares ($1,500.00 USD) en concepto de honorarios de abogado por temeridad, según establecido en la Sentencia Parcial del pasado 10 de agosto de 2022, aplicándole el correspondiente interés legal de cinco por ciento (5.0%) en vigor a la fecha de dicha sentencia; a computarse desde la fecha del 10 de agosto del 2022 en que fue dictada la sentencia, hasta que tales honorarios sean satisfechos.

En adición a lo establecido en la sentencia parcial de 10 de agosto de 2022, se ordena a la parte demandante el pago a favor de la codemandada Ysis Doitteau Cofresí de la suma de cinco mil quinientos dólares ($5,500.00 USD) en concepto de honorarios de abogado, por temeridad, aplicándole el interés legal de nueve punto cinco por ciento (9.5%) en vigor a la fecha en que se dicta la presente sentencia, hasta que tales honorarios sean satisfechos.[28]

Insatisfecho con el resultado, el 24 de febrero de 2025, el Banco presentó el recurso de epígrafe y le imputó al foro primario la comisión de los siguientes errores:

---

[27] *Íd.*, pág. 555.
[28] *Íd.*, págs. 565-567.

Erró el Tribunal al no aplicar la presunción establecida en la Regla 304(5) de Evidencia, que dispone que toda evidencia voluntariamente suprimida resultará adversa a la parte que la haya omitido. Erró el honorable Tribunal al otorgar compensación por daños, incluyendo angustias mentales, sin que la demandada-recurrida presentara evidencia clara y convincente del perjuicio alegado. No se aportó documentación que demostrara una relación causal directa entre el daño y los actos imputados a banco popular de puerto rico, ni se presentó testimonio pericial que estableciera relación causal. Además, se concedió compensación por angustias mentales sin la presentación de informes médicos o diagnósticos que acreditaran la existencia de un trastorno o condición de salud mental, como ansiedad o depresión.

Erró el honorable Tribunal al dar por cierto que la demandada-recurrida sufrió un daño en su historial crediticio sin que esta presentara evidencia que demostrara su puntuación crediticia antes y después del alegado daño

Erró el Tribunal al permitir que la demandada-recurrida declarara sobre la alegada denegación de un préstamo sin presentar documentación que corroborara la existencia de dicha denegación ni su relación con alguna acción atribuible a banco popular de puerto rico. Además, permitió que declarara sobre lo que supuestamente le comunicó una entidad bancaria ajena al caso como razón para el rechazo del préstamo, sin que dicho tercero estuviera disponible para ser contrainterrogado.

Erró el Tribunal al no detallar en qué jurisprudencia baso su determinación para conceder daños a la demandada-recurrida, incumpliendo así con la exigencia jurisprudencial aplicable.

El 13 de marzo de 2025, esta Curia emitió *Resolución* en la cual, entre otros asuntos, se le concedió al Apelante hasta el 14 de abril de 2025 para presentar la transcripción de la prueba oral estipulada ante este Tribunal. Asimismo, se le concedió al Apelante, un término de treinta (30) días, a partir de la presentación de la transcripción, para someter alegato suplementario. De la misma manera, se dispuso que la Apelada debería presentar su alegato en oposición en un término de treinta (30) días, a partir de la fecha de presentación del alegato suplementario.

No obstante lo anterior, el 14 de marzo de 2025, esta Curia le concedió al amparo de la Regla 83.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R.83.1,un término de cinco (5) días al foro primario para fundamentar la *Sentencia Final* emitida el 16 de enero de 2025, notificada el día 23 del mismo mes y año. Particularmente se le requirió al foro *a quo* que fundamentara

conforme a la normativa del Tribunal Supremo de Puerto Rico la determinación de valorización de los daños y perjuicios concedidos a la señora Doitteau Cofresí, la cual estimó en quince mil dólares ($15,000.00). Así las cosas, el 17 de marzo de 2025, el foro primario emitió escrito denominado *Sentencia Enmendada* por virtud del cual modificó la cuantía en concepto de daños otorgada a la Apelada disminuyendo la misma a seis mil dólares ($6,000.00). Por considerar que lo allí esbozado constituía un abuso de autoridad del foro primario, el 25 de marzo de 2025, esta Curia le instruyó al foro *a quo* que éste no ostenta jurisdicción para enmendar la sentencia emitida ya que los procedimientos se encuentran paralizados ante el aludido foro por haberse presentado un recurso de apelación ante el Tribunal de Apelaciones. Por tanto, determinamos que la *Sentencia Final Enmendada* era nula. Asimismo, enfatizamos que la orden emitida por este foro apelativo iba dirigida únicamente a los efectos de que el Tribunal de Primera Instancia **fundamentara** la determinación de valorización de daños emitida por éste. A esos fines, le concedimos un término adicional de cinco (5) días para cumplir con el dictamen emitido el 16 de enero de 2025.En conformidad con lo anterior, el 28 de marzo de 2025, el foro a quo emitió *Segunda Sentencia Enmendada* mediante la cual fundamentó la valorización de la cuantía de los daños concedidos al amparo de la jurisprudencia federal.

Surge del expediente que el 2 de mayo de 2025, la Apelada presentó *Oposición a Recurso de Apelación*. Además, tras el Apelante presentar la transcripción de la prueba oral y la Apelada esgrimir sus observaciones a la misma el 14 de mayo de 2025, dimos por estipulada la aludida transcripción y la acogimos como la prueba oral del caso. No obstante lo anterior, tras vencerse el término dispuesto para ello, el Apelante no presentó alegato suplementario, quedando así el caso perfeccionado. Con el beneficio de la

comparecencia de estas partes, procedemos a exponer la normativa jurídica aplicable al caso ante nuestra consideración.

## II.

### A. *Estándar de Revisión de Apreciación de Prueba*

La Regla 43.2 de Procedimiento Civil, 32 LPRA Ap. V. R. 43.2, establece en lo pertinente que "[l]as determinaciones de hecho basadas en el testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos."

En nuestro ordenamiento jurídico, la "tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende en gran medida de la exposición del juez o la jueza a la prueba presentada". *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 792 (2020). Esto "incluye, entre otros factores, ver el comportamiento del testigo mientras ofrece su testimonio y escuchar su voz". *Íd,* citando a *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 771 (2013). Los tribunales apelativos "no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos". *Dávila Nieves v. Meléndez Marín, supra*, pág. 770.

Por ello, los tribunales apelativos no intervenimos con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realiza ese foro. *Sucn. Rosado v. Acevedo Marrero,* 196 DPR 844, 917 (2016). Sin embargo, esa deferencia descansa en un marco de discreción y razonabilidad. *Citibank NA v. Cordero Badillo,* 200 DPR 724, 735 (2018). La discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 729 (2016). Así que, ese juicio discrecional "no es en función al antojo o voluntad

de uno, sin tasa ni limitación alguna". *Santa Aponte v. Srio. Hacienda,* 105 DPR 750, 770 (1977). Los tribunales revisores podremos sustituir el criterio que utilizó el foro primario por el nuestro únicamente cuando existen circunstancias extraordinarias en las que se pruebe que el foro primario actuó con pasión, prejuicio o parcialidad, incurrió en craso abuso de discreción o en un error manifiesto o de derecho. *Citibank NA v. Cordero Badillo, supra*, pág. 736.

Se dice que el tribunal incurrió en un error manifiesto "cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del tribunal". *Gómez Márquez et al. v. El Oriental, supra,* pág. 793. Esto implica que "la apreciación de esa prueba se distancia de la realidad fáctica o es inherentemente imposible o increíble". *Íd.* Véase, también, *Pueblo v. Rivera Montalvo,* 205 DPR 352, 374 (2020). Dicho estándar de revisión, "restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en los que de la prueba admitida *no exista base suficiente que apoye tal determinación".* *Pueblo v. Toro Martínez,* 200 DPR 834, 859 (2018). (Énfasis en original).

Por otro lado, el juzgador incurre en pasión, prejuicio o parcialidad si actúa "movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín, supra,* pág. 782. De otra parte, un tribunal puede incurrir en abuso de discreción cuando el juez: (1) ignora sin fundamento algún hecho material importante que no podía pasar por alto, (2) concede demasiado peso a un hecho inmaterial y funda su decisión

principalmente en ese hecho irrelevante, (3) a pesar de examinar todos los hechos del caso, hace un análisis liviano y la determinación resulta irrazonable. *Pueblo v. Sanders Cordero,* 199 DPR 827, 841 (2018).

Cónsono con lo anterior, la Regla 19 (A) del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 19, dispone lo siguiente:

Cuando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, someterá una transcripción, una exposición estipulada o una exposición narrativa de la prueba. (Énfasis nuestro).

A tenor con lo dispuesto en la aludida regla, aquella parte que señale un error referente a la suficiencia de la prueba o la apreciación errónea de esta es quien tiene la responsabilidad de someter al foro revisor una transcripción, una exposición estipulada o una exposición narrativa de la prueba. El foro intermedio apelativo no puede cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de los mecanismos provistos para ello, la prueba que tuvo ante sí el foro primario.

### B. Daños Extracontractuales

Conforme a nuestro ordenamiento jurídico, "[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado". 31 LPRA ant. sec. 5141.[29] Por consiguiente, una acción de daños requiere que concurran tres requisitos: "(1) tiene que haber un daño real; (2) debe existir nexo causal entre el daño y la acción u omisión de otra persona, y (3) el acto u omisión tiene que ser culposo o negligente" (Cita omitida).*López v. Porrata Doria,* 169 DPR 135, 150 (2006).

---

[29] En vista de que los hechos que dieron lugar a la presente causa de acción tienen su origen en el 2019, antes de la aprobación del nuevo Código Civil, haremos referencia a las disposiciones del derogado Código Civil de 1930.

Establecido esto, "[l]a imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización". 31 LPRA ant. sec. 5141. Ante ello, las reclamaciones por responsabilidad civil extracontractual "se distinguen porque la responsabilidad frente al perjudicado surge sin que le preceda una relación jurídica entre las partes". *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 908 (2012).

Para probar la causa de acción en daños, la parte tiene el deber de evidenciar el daño y el nexo causal. A los efectos de establecer nexo causal, en Puerto Rico rige la doctrina de causa adecuada. Conforme a esta doctrina, "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general" (Cita y escolio omitido). *Nieves Díaz v. González Massas*, 178 DPR 820, 844 (2010). Este es un "elemento imprescindible en una reclamación por daños y perjuicios, es un elemento del acto ilícito que vincula al daño directamente con el hecho antijurídico". *Íd.*, págs. 844-845 (Escolio omitido). De igual forma, la culpa o negligencia de una persona radica en la omisión de la diligencia que exige la naturaleza de la obligación y vaya acorde a las circunstancias, el tiempo y lugar. *López v. Porrata Doria, supra.* Por lo tanto, cuando la obligación no expresa la diligencia que ha de prestarse, se exige la que corresponda a una persona prudente y razonable. *Íd.*; *Colón y otros v. K-mart y otros*, 154 DPR 510, 517 (2001).

Ahora bien, a la hora de valorar daños nuestro más Alto Foro ha manifestado que "la tarea judicial de estimar y valorar los daños resulta difícil y angustiosa, debido a que no existe un sistema de computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas." *Herrera, Rivera v. SLG Ramírez-Vincens*, 179 DPR 774, 784 (2010). De igual modo, es norma firmemente reiterada que los foros

apelativos no deben intervenir con "la estimación de los daños que los tribunales de instancia realicen, salvo cuando la cuantía concedida advenga ridículamente baja o exageradamente alta." *Íd.*, pág. 784-785. Ello pues, la valoración de daños está sujeta a un grado de especulación el cual conlleva elementos subjetivos como la discreción, el sentido de justicia y la conciencia humana del juzgador de los hechos. *Íd.*, pág. 785.

Apoyado en lo anterior, el Tribunal Supremo de Puerto Rico ha sido enfático en que a la hora de evaluar si la compensación concedida es ridículamente baja o exageradamente alta, se debe examinar la prueba desfilada ante el foro primario y las cuantías que se otorgaron en casos similares resueltos anteriormente. *Santiago Montanez v. Fresenius Medical*, 195 DPR 476, 491 (2016). De esta forma, la indemnización concedidas en casos anteriores constituyen un punto de partida y referencia útil para justipreciar las concesiones que se otorgaron en el foro de primera instancia. *Íd.* Ello, pese a que no existen dos (2) casos exactamente iguales y que cada uno es distinguible según sus circunstancias *Íd.* No empece lo anterior, las compensaciones provenientes de casos anteriores deben ajustarse al valor presente. *Íd.* Sobre este particular, el Tribunal Supremo de Puerto Rico ha establecido la siguiente metodología para el cálculo de valorización de daños:

> En *Herrera, Rivera v. S.L.G. Ramírez-Vicéns*, supra, acogimos el método que recomendó el exjuez Antonio Amadeo Murga (Amadeo Murga) para actualizar al valor presente las compensaciones otorgadas en casos similares anteriores. Conforme a ese método, utilizamos el cambio en el poder adquisitivo del dólar a través del tiempo para obtener el ajuste por inflación. A su vez, el valor adquisitivo del dólar lo obtuvimos del índice de precios al consumidor que prepara el Departamento del Trabajo y Recursos Humanos (Departamento del Trabajo). Una vez obtenido el ajuste por inflación, realizamos un ajuste adicional por el crecimiento económico ocurrido entre el año del caso que se utiliza como referencia y el año cuando se dictó sentencia en el caso que teníamos ante nuestra consideración.

> […]

> Recientemente, en *Rodríguez et al. v. Hospital et al.*, [186 DPR 889 (2012)], reconocimos que no hay consenso entre los expertos en cuanto al método que debe utilizarse para actualizar las compensaciones concedidas en el pasado y optamos por acoger el método que utiliza el índice de precios al consumidor con el 2006 como año base. Empero, rechazamos realizar el ajuste que recomendó Amadeo Murga y adoptamos la postura del Prof. José Julián Álvarez González, quien desfavorece que se haga un ajuste adicional por el crecimiento económico cuando se utiliza el nuevo índice de precios al consumidor. Así, concluimos que cuando utilizamos un índice de precios al consumidor cuyo año base es reciente, es innecesario realizar el ajuste que señala Amadeo Murga como segunda parte del proceso de actualización de las partidas concedidas *Rodríguez et al. v. Hospital et al* (citas omitidas). *Íd.*, págs. 495–97 (citas omitidas).

Del mismo modo, nuestro Máximo Foro ha advertido a los jueces y juezas sobre la importancia de **detallar en sus dictámenes los casos que se utilicen como referencia o punto de partida para la estimación y valoración de daños, además de incluir el cómputo realizado para establecer las cuantías que se concedan**. *Íd.*, pág. 493. En armonía con lo anterior, nuestro más Alto Foro ha reiterado que:

> Este llamado a los jueces y las juezas cobra importancia ante la necesidad imperante de instruir a las partes y a los miembros de la profesión jurídica en torno al método que se utiliza en ese difícil y angustioso proceso de estimar y valorar los daños. Habida cuenta de que esa tarea lleva consigo cierto grado de especulación, es forzoso **explicar qué casos se utilizan como referencia y cómo las cuantías concedidas se ajustan en esos casos anteriores al caso que el tribunal tiene ante su consideración.** (Énfasis nuestro) *Íd.*

Cónsono con la normativa previamente reseñada, a la hora de valorizar los daños, se ha establecido que los juzgadores de los hechos deben realizar un ejercicio de dos (2) pasos, el cual se estableció en *Santiago Montañez v. Fresenius Medical, supra. Sucn. Sunc. Mena Pamias et al. v. Melendez et al.,* 212 DPR 758, 771 (2023). El primer paso es evaluar aquellos casos comparables que serán utilizados como punto de partida para determinar las cuantías, los cuales, según esbozamos, deberán estar detallados en los dictámines de los foros primarios. *Íd.*, pág. 770. El segundo paso consiste en que los tribunales sentenciadores deberán tomar en

consideración "las circunstancias particulares del caso considerado ante el tribunal". *Íd.* Es decir, el juez o la jueza no puede descansar meramente en un cálculo matemático. *Íd.*, pág. 771.

### C. Prueba de referencia

Prueba de referencia constituye toda "declaración que no sea la que la persona declarante hace en el juicio o vista, que se ofrece en evidencia para probar la verdad de lo aseverado". Regla 801 de Evidencia, 32 LPRA Ap. VI; Véase, *Pueblo v. Lugo López*, 2024 TSPR 83 (2024) 214 DPR __, pág. 12. En vista de ello, dado a los "peligros que entraña la admisión de una evidencia proveniente de un declarante a quien la parte contra quien se ofrece la declaración no ha confrontado ni contrainterrogado, la Regla 804 de Evidencia reconoce una prohibición general a la prueba de referencia, salvo unas exclusiones o excepciones particularmente definidas" (citas omitidas). *Íd.* El fundamento para la exclusión de este tipo de prueba responde a "la falta de oportunidad para contrainterrogar". *Pueblo v. Pérez Santos*, 195 DPR 262, 270 (2016).

Ahora bien, la Regla 805 de Evidencia, *supra*, enumera ciertas excepciones a la norma general de exclusión. *Rosado Reyes v. Global Healthcare*, 205 DPR 796, 817 (2020). En lo pertinente, las aludidas excepciones son las siguientes:

> (a) Declaraciones contemporáneas a la percepción. — Una declaración que narra, describe o explica un acto, condición o evento percibido por la persona declarante y que haya sido hecha mientras la persona declarante percibía dicho acto, condición o evento, o hecha inmediatamente después.
>
> [...]
>
> (f) Récord Récords de actividades que se realizan con regularidad. — Un escrito, informe, récord, memorando o compilación de datos —en cualquier forma— relativo a actos, sucesos, condiciones, opiniones o diagnósticos que se hayan preparado en o cerca del momento en que éstos surgieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta, si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe, récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra

> persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación inspiren falta de confiabilidad. El término "negocio", según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

### D. La Regla 304 (5) de Evidencia

Las Reglas de Evidencia de Puerto Rico, 32 LPRA Ap. VI, establecen que una presunción es una deducción de un hecho que la ley autoriza a hacer o requiere que se haga de otro hecho o grupo de hechos previamente establecidos en la acción. Véase, Regla 301(a) de Evidencia, *supra.* Al hecho previamente establecido se denomina hecho básico, mientras que al hecho deducido mediante presunción se le conoce como hecho presumido. *Íd.* Como regla general, las presunciones son controvertibles. Véase, Regla 301(b) de Evidencia, *supra.* Sin embargo, una presunción es incontrovertible cuando la ley no permite presentar evidencia para destruirla o rebatirla. *Íd.*

Cónsono con lo anterior, es harto sabido que las presunciones "no son evidencia, sino reglas relativas al modo de evaluar la evidencia". *Pueblo v. Nieves Caban,* 201 DPR 853, 898 (2019) citando a E.L. Chiesa, *Sobre la validez constitucional de las presunciones,* XIV (Núm. 3) Rev. Jur. UIPR 727 (1980).

En vista de ello, la Regla 304(5) de Evidencia, *supra,* establece una lista de presunciones específicas, entre las cuales destacamos la siguiente:

> Las presunciones son aquellas establecidas por ley o por decisiones judiciales. Entre las presunciones controvertibles se reconocen las siguientes:
>
> [...]
>
> (5) Toda evidencia voluntariamente suprimida resultará adversa si se ofreciere.

**III.**

En el presente recurso, el Apelante nos solicita que revoquemos la *Sentencia Final* mediante la cual el foro primario declaró *Ha Lugar* la reconvención instada por la Apelada. Por virtud del aludido dictamen, el foro *a quo* le imputó al Banco el pago de una indemnización valorada en quince mil dólares ($15,000.00) por los daños y perjuicios que esta entidad le causó a la señora Doitteau Cofresí. En concreto, el Apelante esboza, en su primer señalamiento de error, que incidió el foro *a quo* al no aplicar la presunción establecida en la Regla 304 (5) de Evidencia, *supra*. Asimismo, en su segundo error, sostiene que el foro primario erró al otorgar una compensación por daños y angustias mentales sin que se aportara documentación, testimonio pericial, o informes médicos que establecieran una relación causal entre el daño y los actos imputados al Banco. De la misma forma, en su tercer señalamiento de error, el Apelante esboza que el foro primario incidió al dar por cierto que la Apelada sufriera un daño en su historial crediticio sin que se presentara evidencia para ello. Como cuarto error, el Banco argumenta que el foro primario erró al permitir que la señora señora Doitteau Cofresí declarara sobre lo que le comunicó a una entidad bancaria ajena al caso, sin que dicha entidad estuviera disponible para ser contrainterrogada. Finalmente, como quinto señalamiento de error, sostiene el Banco que el foro primario no detalló la jurisprudencia que utilizó para su determinación sobre la valorización de los daños concedidos.

Por su parte, la Apelada negó que el foro primario incurriera en los errores imputados por el Banco. En específico, alude a que en la moción de sentencia sumaria que presentó el 12 de noviembre de 2020, acompañó dos (2) informes crediticios para apoyar sus alegaciones. A su vez, alegó que en casos de daños no es necesario presentar prueba pericial para demostrar un perjuicio. De igual

manera, en cuanto al error relacionado a la prueba de referencia, esta parte sostiene que, en el caso de marras, la declaración que ésta misma proveyó en corte abierta, se encontraba cobijada por la excepción de declaración contemporánea a la percepción. Por último, esgrime que el quinto señalamiento de error se tornó académico pues, el 28 de marzo de 2025, el foro *a quo* expuso en su *Segunda Sentencia Enmendada*, los fundamentos para llegar a la cuantía otorgada. Veamos.

En vista de que los primero cuatro (4) señalamientos de error imputados versan sobre elementos relacionados a la prueba desfilada en el juicio, procederemos a discutirlos de manera conjunta. De entrada, esboza el Banco que, en el caso que nos ocupa, el foro *a quo* no debió conceder los daños reclamados por la señora Doitteau Cofresí. Ello, pues, en la vista llevada a cabo el 9 de septiembre de 2022, el foro primario resolvió aplicar la presunción contenida en la Regla 304 (5) de Evidencia, *supra*, y, además, la Apelada ofreció declaraciones que constituían prueba de referencia, no presentó prueba relacionada al efecto que tuvo su historial crediticio y, de la misma manera, no proveyó prueba documental ni pericial para sustentar las angustias mentales que alegó sufrir. Sobre esta última alegación, si bien, el Tribunal Supremo de Puerto Rico ha aclarado que no es un requisito presentar prueba pericial para demostrar ese tipo de daño, véase *Meléndez Vega v. El Vocero De PR*, 189 DPR 123, 209 (2013), en el caso de marras, la Apelada no presentó evidencia alguna de la alegada condición médica que sufría. Solo consta su testimonio y meras alegaciones generalizadas sobre la situación mental y condición de ésta. A nuestro entender, luego de evaluado el expediente de auto y la transcripción de la vista celebrada el 9 de septiembre de 2025, no se probó las angustias mentales alegadamente sufridas por la Apelada.

Ahora bien, si bien estas alegaciones esbozadas por el Banco son meritorias, ello por sí solo, no acarrea la improcedencia de la causa de acción de la señora Doitteau Cofresí. A tono con lo anteriormente expuesto, es pertinente destacar que, conforme surge de los autos, el 12 de agosto de 2021, mediante *Resolución* que denegó la solicitud de sentencia sumaria instada por la Apelada, el foro primario formuló las siguientes determinaciones de hechos:

6. **Que el Banco Popular de Puerto Rico informó a las agencias crediticias una delincuencia en relación con la línea de crédito del Banco Popular número 0000164021051.**

7. La codemandada Doitteau Cofresí no firmó contrato de préstamo ni servicio en relación con la tarjeta de crédito 5310- 5400-0417-6003.

8. La codemandada Doitteau Cofresí nunca ha solicitado una tarjeta de crédito con el Banco Popular de Puerto Rico.

9. La codemandada Doitteau Cofresí no es titular de la tarjeta de crédito 5310-5400-0417-6003.

10. **El Banco Popular, en algún momento entre las fechas del 21 de agosto de 2017 y 07 de noviembre de 2019, informó a las agencias crediticias o *Credit Bureau* que la línea de crédito del Banco Popular número 0000164021051 era responsabilidad de la codemandada Doitteau Cofresí.**

11. **El Banco Popular de Puerto Rico informó a las agencias crediticias una delincuencia con relación a la línea de crédito del Banco Popular número 0000164021051** (Énfasis nuestro).[30]

Es de observar que, dichas determinaciones de hechos son **concluyentes y categóricas en cuanto a que el Banco informó a las agencias crediticias la referida línea de crédito**. Estas determinaciones de hechos se adoptaron en la *Sentencia Parcial* emitida el 10 de agosto de 2022, la cual fue apelada y posteriormente confirmada por esta Curia.[31] En aquella ocasión, **coincidimos con el foro primario en cuanto a que no existía una causa de acción contra la Apelada referente a un cobro de dinero que instó el Banco contra esta parte**. En otras palabras, resolvimos que la

---

[30] Véase, Apéndice del Recurso, págs. 107-108.
[31] Consta en el expediente que nuestra *Sentencia* en el caso KLCE202201211 no fue recurrida al Tribunal Supremo de Puerto Rico.

deuda de la cuenta de la línea de crédito que el Banco pretendía cobrarle a la señora Doitteau Cofresí, en efecto, no era reclamable, pues el Banco no demostró que la Apelada fuera titular de dicha cuenta. **Cabe subrayar que dicha determinación se tornó en la ley del caso**. A su vez, las precitadas determinaciones de hechos fueron nuevamente acogidas por el foro *a quo* en la *Sentencia Final* de la cual versa la presente controversia.

Con este trasfondo en mente, no podemos pasar por alto la siguiente declaración expresada por la Apelada:

> P: ¿Qué efecto tuvo el que apareciera esa deuda en el informe de crédito, con respecto a la cantidad que usted solicitó del préstamo en esa [ininteligible]?
>
> R: En la cantidad de dinero que me prestaron, pues, yo conseguí lo que necesitaba. El efecto que tuvo fue que **la complicación del préstamo, el traer unas personas cuando yo no quería comprometer a otras personas con un asunto personal, en los intereses y en la vida del préstamo...** verdad, que tiene un efecto más hacia mi persona de lo que pudo haber sido, porque yo llevaba trabajando mi crédito responsablemente para que en el momento que yo tuviera la necesidad de consolidar mi préstamo estudiantil, que básicamente yo pudiera obtener un buen interés y salir de la situación económica. No endeudarme más, no hacer una [ininteligible] y fue bastante estresante la situación.
>
> P: Bien. Finalmente... Yo le pregunto, ¿qué efecto tuvo en usted y en su persona esta situación, de que, de que se le reflejara esta deuda, esto en el *credit history* y el resultado que tuvo, que tuvo, que usted explicó, que acaba de describir exactamente qué fue lo que pasó... Pero ahora la pregunta es, ¿qué efecto tuvo eso en usted, si alguna, usted, en sus mociones...? ¿Qué efecto tuvo en usted como tal, usted, en sí misma?
>
> R: El efecto del caso, porque no es solo el hecho del informe de crédito como tal. Después del huracán, yo sé que pasó en el 2017, lamentablemente yo estuve un término de tiempo sin trabajar, con la oficina cerrada casi tres meses. Me costó muchísimo salir de eso económicamente, más de un año. Yo tuve que prescindir de los servicios de la asistente que tenía, aún todavía no tengo asistente en la oficina. Incluso, cuando... después que pude salir de eso, gracias a las ayudas federales, en posponer los pagos estudiantiles y todo esto que siguen acumulándose intereses y un interés compuesto y el principal sigue creciendo... Cuando estoy viendo la forma de salir de esto, es que esta demanda sorpresivamente la presentan, y ahí es que entonces estoy tratando de visualizar cómo puedo estabilizarme económicamente nuevamente, pues se me complica la situación con el informe que le hacen a las agencias. [32]

---

[32] Véase, Transcripción de la Prueba Oral Estipulada, págs. 36-37.

Nótese que dicho testimonio, el cual juzgamos es uno completamente admisible en evidencia, le mereció credibilidad al foro primario. Es norma reiterada que, ante la ausencia de error manifiesto, prejuicio, parcialidad o pasión, no se favorece la intervención de los tribunales apelativos en "la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia. *Peña Rivera v. Pacheco Caraballo*, 213 DPR 1009, 1024 (2024). Ello responde a que "la tarea de adjudicar credibilidad y determinar lo que realmente ocurrió en un caso depende en gran medida de la exposición del juez o de la jueza a la prueba presentada; trabajo que, en esencia, se realiza en el foro primario". *Íd*. Por ende, la deferencia judicial que los foros apelativos otorgamos responde a que "jueces de las salas de instancia están en mejor posición para aquilatar la prueba testifical porque tienen la oportunidad de oír, ver y apreciar el comportamiento del testigo". *Íd*.

Por consiguiente, conforme la normativa previamente reseñada y tras una detenida y cuidadosa lectura del expediente ante nuestra consideración, incluyendo la transcripción de la prueba oral estipulada de la vista celebrada el 9 de septiembre de 2022, concluimos que el foro primario determinó correctamente la procedencia de la causa de acción instada por la Apelada.

Resuelto lo anterior, corresponde atender el quinto error esgrimido por el Apelante. El Banco sostiene que el foro primario no siguió los lineamientos establecidos por la jurisprudencia a la hora de valorizar los daños. Nuestra más Alta Curia ha sido consistente y enfático en torno a que la tarea de valorizar daños no es una ciencia exacta. No empece a esto, con el propósito de establecer un procedimiento uniforme, nuestro Tribunal Supremo desarrolló una metodología para que el foro primario estime de manera justa el valor de un daño. Como corolario de lo anterior, en *Sucn. Mena*

*Pamias et al. v. Meléndez et al, supra,* nuestra más Alta Curia aclaró que el ejercicio de valorizar daños conlleva dos (2) pasos: En primer lugar, le corresponde al foro primario evaluar aquellos **casos comparables** que serán utilizados como punto de partida para determinar las cuantías, **los cuales deberán ser detallados en los dictámenes emitidos.** En segundo término, los foros primarios deben evaluar las circunstancias particulares del caso ante su consideración. A tenor con esta normativa procederemos a evaluar la *Sentencia Final* apelada en aras de atender el error esgrimido.

Surge del dictamen apelado, que el foro *a quo* valorizó los daños alegados en la reconvención en quince mil dólares ($15,000.00). Colegimos con las alegaciones vertidas por la Apelante. Esta determinación carece de fundamento alguno.

El 14 de marzo de 2025, en virtud de la Regla 83.1 de nuestro Reglamento, *supra*, le ordenamos al foro primario a fundamentar su dictamen, particularmente en cuanto al monto de daños concedido a la Apelada ascendente a quince mil dólares ($15,000.00), al amparo de la normativa expuesta en nuestra jurisprudencia. Oportunamente, el 17 de marzo de 2025, el foro primario emitió *Sentencia Final Enmendada.* En esta, el foro primario redujo la cuantía concedida y fundamentó dicha determinación. No empecé a ello, el 25 de marzo de 2025, esta Curia emitió *Resolución* en la cual aclaramos que el foro *a quo* no ostentaba jurisdicción para enmendar la aludida sentencia, por lo que le concedimos un nuevo término de cinco (5) días para que estableciera los fundamentos para su determinación particularmente en cuanto a la valorización de los daños concedidos. Así pues, el 29 de marzo de 2025, el foro primario emitió *Segunda Sentencia Enmendada* y mediante esta justificó la cuantía concedida conforme un caso proveniente de la jurisdicción federal.

Es menester aclarar que el foro primario **incumplió con las órdenes emitidas por esta Curia,** y que por haber actuado sin jurisdicción ambas sentencias enmendadas son nulas. No consta autorización de este Foro para enmendar el dictamen apelado, pues como es harto sabido, los procedimientos a nivel de foro primario permanecen paralizados a la presentación de un recurso de apelación, a no ser que esta Curia disponga otra cosa. Ante la ausencia de fundamento en el ejercicio de valorización, **concluimos que el foro primario no valorizó los daños conforme lo exige nuestro ordenamiento jurídico**. Ello es así, pues, los casos normativos referente a la metodología de valorización de daños exigen que, a la hora de examinar si la compensación concedida fue exageradamente alta o ridículamente baja, debemos evaluar la prueba desfilada y las **cuantías otorgadas en casos similares resueltos previamente. En síntesis, los mismos se utilizan como referencia** para computar un valor que será el punto de partida para la valorización final del daño. Véase, *Santiago Montañez v. Fresenius Medical Care*, supra, pág. 491.

Cónsono con lo anterior, es norma firmemente reiterada que "si bien es cierto que no existen dos (2) casos exactamente iguales y que cada caso es distinguible según sus propias circunstancias, a los fines de determinar si la valorización de los daños en un caso específico es o no adecuad[a], ciertamente resulta de utilidad examinar las cuantías concedidas **por este Tribunal en casos similares anteriores**". (Énfasis nuestro) *Herrera, Rivera v. S.L.G. Ramírez-Vincens*, 179 DPR 774, 785 (2010), citando a *S.L.G. v. F.W. Woolworth & Co.*, 143 DPR 76, 81–82 (1997).

En ese sentido, en cumplimiento con nuestra función revisora y en aras de determinar la cuantía en concepto de los daños a los cuales la señora Doitteau Cofresí es acreedora, entendemos que es adecuado usar la determinación que el Tribunal Supremo de Puerto

Rico emitió en *Meléndez v. Banco Crédito*, 99 DPR 285 (1970). Los hechos del precitado caso son los siguientes:

> El 16 de febrero de 1968 el demandante depositó en su cuenta corriente con el recurrente la suma de $2,699.34. Dicho depósito se extravió en el banco y no se le acreditó el mismo a la cuenta del demandante. Como consecuencia de eso el banco devolvió ocho cheques 'por falta de fondos' que el demandante expidió luego de hacer el referido depósito. Esto le causó al demandante inevitables y comprensibles sufrimientos mentales o morales. *Íd.*

Ante este cuadro, el Tribunal Supremo de Puerto Rico indemnizó al demandante con el monto de dos mil dólares ($2,000.00). Es de observar que el precitado caso, versa sobre una acción culposa o negligente por parte de una institución bancaria, la cual afectó a uno de sus clientes, tal y como ocurre en el caso de marras. Ahora bien, al emplear el análisis de *Santiago Montañez v. Fresenius Medical Care*, supra, pág. 491, en el presente caso, tomamos como punto de partida la compensación otorgada en *Meléndez v. Banco Crédito, supra*, que son dos mil dólares (**$2,0000)** los cuales, luego de aplicada la fórmula correspondiente al caso de autos, obtuvimos un total estimado de nueve mil setecientos cincuenta y tres dólares con cuarenta y dos centavos **($9,753.42).**[33] Esta será la cantidad que utilizaremos como punto de partida para la valorización final de los daños sufridos por la señora Doitteau Cofresí.

Tras haber determinado lo anterior, corresponde tomar en consideración las particularidades de la controversia que esta ante nuestra consideración. Si bien el caso previamente reseñado y el de autos son similares en cuanto a que giran en torno a personas que

---

[33] El valor adquisitivo del dólar en junio de 2001 era de **$3.56**. La cantidad concedida de **$2,000.00** en *Meléndez v. Banco Crédito*, *supra*, la multiplicamos por **$3.56** para un total estimado de **$7,120.00** que constituye el ajuste por inflación de los **$2,000.00**.

El valor adquisitivo del dólar a enero de 2025 era de **$0.73**. En ese sentido, para actualizar la cantidad de **$7,120.00** al valor adquisitivo del dólar a enero de 2025, se realiza el siguiente cómputo: **$7,120.00 ÷ $0.73 = $9,753.42.** Esta cantidad representa un estimado del valor presente de la indemnización concedida en *Meléndez v. Banco Crédito*, *supra*.

se vieron afectadas ante actos irresponsables por parte de una institución bancaria, corresponde distinguirlos. En el caso de autos, si bien la Apelada se vio afectada por las acciones del Banco, la prueba presentada, admitida y creída por el foro *a quo*, enfatizó las dificultades que ésta tuvo para la obtención de otros servicios financieros, a diferencia de *Meléndez v. Banco Crédito, supra*, en el que la prueba giró en torno a las angustias mentales que sufrió el demandante por las gestiones de un cobrador del banco. Por ello, tras analizar las circunstancias particulares del presente caso, entendemos razonable concederle a la señora señora Doitteau Cofresí la cantidad de siete mil dólares (**$7,000.00)** por daños.

## IV.

Por los fundamentos que previamente esbozados, **modificamos** la sentencia apelada, únicamente en cuanto a la partida por concepto de daños, la cual se reduce a **$7,000.00**, y así modificada, **confirmamos**.

Lo acordó y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones